MR. CHRISTOPHER MCINTOSH
REGISTRATION NO. 30512-013
FEDERAL DETENTION CENTER
POST OFFICE BOX 13900
SEATTLE, WA 98198-1090

November 2, 2012

Hon. Thomas S. Zilly
U.S. District Court Judge
U.S. District Court for the Western District of Washington
700 Stewart Street
Seattle, WA 98101

Dear Judge Zilly:

In December of 2005, I stood before you at sentencing a ignorant young man full of ideals and pretentions. Certain that I knew the truth, I committed a serious crime. I sincerely thought that I had all the answers. Filled with passion, I believed that any means should be used to change the world. I was wrong, and the years I have spent behind bars have convinced me that violence is no answer to the injustices this world presents us with.

My time in prison was not easy. My conviction for arson marked me as a dangerous offender, and I was placed in high security prisons. From the day I arrived at the penitentiary, I was the target of abuse and assault by other inmates. I defended myself as best I could, but this resulted in institutional infractions and sanctions. I spent a total of nearly three years in solitary confinement.

The isolation and restrictive conditions were very difficult to endure. I felt my sanity slip away slowly with each passing day. At times I felt that I might never survive. But I maintained a flicker of hope that I might emerge from prison and salvage the rest of my life.

When I was released and began my term of supervised release, I had great difficulty adjusting to life outside the walls. I had spent most of the last years of my prison term in a tiny cell with no human contact. I found it difficult to talk with other people. It was hard to put my thoughts in to words after such a long period of enforced silence. I feared being out in public. The open spaces and chaotic activity of the free world terrified me. And I was frustrated by rules that seemed stacked against me. To get out of the halfway house, I needed to have a "release address." However, after eight years behind bars, I knew no one in the area and had no one who would offer me a place to live. I saw this as a "Catch 22" that unfairly forced me to endure additional confinement.

I was also frustrated that I was unable to get a job. My interviews with prospective employers seemed to go well, but I never got an offer. Although I had the qualifications, I was told again and again that my facial tattoos made me unemployable. While in prison, I had literally defaced myself with antisocial tattoos. I did this on purpose to signal my defiance of society, but these permanent marks remain long after my attitude and ideas changed. This made me frustrated and

angry with myself. I felt that I could never escape my past – it was written on my face. I felt it was unfair to demand that I get a job before I could get out of the halfway house, since no one would hire me.

None of this excuses my decision to leave the halfway house and violate my conditions of supervised release. I left and lived in the community. I worked to overcome my fear of being out in public. My communication skills improved. During my time outside, I did not drink or take drugs. I did not commit any crimes. I met a woman and fell in love. We lived together, and I hoped our joy would never end. However, I knew that I would be awakened from this dream and have to face the consequences.

Since my arrest, I have thought about my mistakes and how I can work with my Probation Officer to succeed. First, I recognize that I have serious mental health problems. The fallout from my long isolation haunts me to this day, and I am burdened with intrusive thoughts and mood swings. I need to confront my mental health problems directly. I want to work to overcome these difficulties with treatment, and I am willing to work with my Probation Officer to me this happen.

Second, I understand that I need to abide by the rules of supervised release and work my way toward freedom. I now see that it is not impossible to comply with the rules (there is no "Catch 22" in reality). But earning my right to live in the community will not be easy. To reintegrate myself into society, I need to change my attitude and focus on incremental steps toward liberty. My Probation Officer has offered to arrange to have some of my tattoos removed. I want to do this as a visible manifestation of my commitment to erasing the vestiges of my defiant past.

Finally, I accept full responsibility for my violations. I promise the Court that I will devote myself to succeeding within the rules and complete my term of supervised release.

Sincerely,

/s

Christopher McIntosh